IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH E. PLEMON,

                    Plaintiff,

          v.                                              OPINION and ORDER

KILOLO KIJAKAZI,                                          21-cv-148-jdp
Acting Commissioner of the Social Security
Administration,

                    Defendant.[1]

---

Plaintiff Elizabeth E. Plemon seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Plemon was not disabled within the meaning of the Social Security Act. Plemon contends that administrative law judge (ALJ) Joseph D. Jacobson erred by failing to adequately explain both why he rejected evidence that supported Plemon's claim and why he found that Plemon is able to perform full-time, sedentary work. The court concludes that the ALJ failed to build a logical bridge between the evidence and his conclusions, so the case will be remanded for further proceedings.

BACKGROUND

Plemon sought benefits based on both physical and mental impairments, alleging disability beginning in November 2017, when she was 36 years old. R. 13, 24.[2] In an October

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 9.

2020 decision, the ALJ found that Plemon suffered from lumbar spine disorder, along with some mental impairments that are not the subject of Plemon's appeal. R. 15. After finding that Plemon's impairments weren't severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Plemon the residual functional capacity (RFC) to perform sedentary work with additional restrictions that Plemon cannot climb ladders, ropes, or scaffolds, and can frequently use ramps and stairs, crouch, kneel, crawl, and reach with her left arm. R. 18.

Based on the testimony of a vocational expert, the ALJ found that Plemon was not disabled because she could perform jobs that are available in significant numbers in the national economy, such as final assembler, weight tester, and grinding machine operator. R. 25. The Appeals Council declined review. R. 1–6. Plemon now appeals to this court.

On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Plemon challenges the ALJ's decision on multiple grounds, but they all relate to the ALJ's failure to build the required logical bridge.  First, Plemon says that the ALJ failed to support his finding that Plemon could perform sedentary work on a full-time basis with anything other than his own interpretation of the medical records. Second, Plemon says that the ALJ failed to explain why he was rejecting evidence that supported Plemon's claim,

specifically the opinion of Plemon's physical therapist and treating physician that Plemon can't perform sedentary work on a full-time basis and Plemon's own statements about her limitations.

ANALYSIS

The court will begin with a review of the ALJ's handling of the opinion evidence. Relevant to this appeal, the ALJ considered the opinions of the state agency consultants, an examining physician, a physical therapist, and a treating physician. He didn't fully adopt any of them.

The state agency consultants opined that Plemon could perform medium work. But the ALJ found those opinions to be unpersuasive. R. 21.

Examining physician Katrina Hammel opined that Plemon could sit, stand, walk, bend, reach, stoop, and grasp frequently during an eight-hour workday. *Id* The ALJ found that Hammel's opinion was partially persuasive. He adopted Hammel's opinions that Plemon could sit and reach frequently, but he found that Plemon was more limited in standing and walking and less limited in bending, stooping, and grasping than Hammel opined.

Physical therapist Annmarie King conducted a functional capacity evaluation of Plemon in December 2019. King found that Plemon could perform sedentary work, but not on a full-time basis. R. 418. Specifically, King found that Plemon could not sit for six hours a day or two hours at a time, and she could not walk or stand for up to two hours a day, as required to work full time in a sedentary position. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The ALJ wrote that King's opinion was "generally supported by examination findings," but he found it to be only partially persuasive. R. 22. Specifically, he wrote that King's opinion that

3

Plemon could perform sedentary work "was generally consistent with the medical evidence that showed the claimant had some reduced strength and issues with a gait disturbance." *Id.* But "the remainder of [King's] opinion was inconsistent with the medical evidence that showed the claimant had normal grip strength, normal range of motion in her extremities, normal reflexes, normal sensation, was able to squat and recover, and did not need an assistance device to ambulate." R. 22.

After conducting his own physical examination, Plemon's treating physician, Andrew Floren, concurred with King's opinion. R. 448, 458–59. Although the ALJ wrote that King's opinion was "generally supported by his examination findings," R. 22, the ALJ found Floren's opinion to be unpersuasive. The ALJ wrote that Floren examined Plemon only once, he didn't schedule a follow up, and the record included a statement attributed to Plemon that she only needed Floren to say that he agreed with the functional capacity evaluation. *Id.*

As for Plemon's subjective complaints, the ALJ said little about them. He noted Plemon's statements during the hearing that her back would start to hurt while standing. R. 19, 22. And he included the familiar boilerplate that Plemon's were "not entirely consistent with the medical evidence and other evidence in the record." R. 19. He didn't consider any of Plemon's statements in her function report, including that sitting in most chairs is uncomfortable for her, she can only do household chores "in small increments," getting dressed and grooming herself is difficult, going up and down stairs causes "a lot" of pain, and she wakes up frequently from pain and needs to move to a chair or couch for relief. R. 174–80.

Rather than relying on one or a combination of medical opinions in the record, the ALJ conducted his own review of the medical records. The core of his analysis is in two paragraphs in which he summarized the evidence.

In the first paragraph, he identified evidence that he believed supported Plemon's claim: she had pain after a November 2017 car accident (in which her car rolled over); she had reduced range of motion in the lumbar spine during some examinations; she had difficulty getting up and out of the chair and difficulty getting on and off the examination table; she ambulated with difficulty; she had reduced strength in her extremities; she had "barely perceptible strength" in her hands; she had a gait disturbance; she had a slow and mildly antalgic gait; and she underwent physical therapy. R. 19.

In the second paragraph, the ALJ described evidence that he believed undermined Plemon's claim: she didn't have any spasm of the paraspinous muscles; she was able to walk on heels, walk on toes, tandem heel walk, and bend over and touch her toes in a cautious manner; she could squat to the floor and recover; she had a normal range of motion in the lumbar spine during one examination; she had "minimal" discomfort of the lumbar spine and no localized point tenderness during one examination; she had a normal range of motion in her extremities in multiple examinations; she had normal strength in her extremities during multiple examinations; she had normal grip strength during examinations; she had normal reflexes and normal sensation during examinations; she didn't have a gait disturbance during one examination in April 2019, and she had a normal gait in multiple examinations; and  she was able to ambulate without assistance or an assistive device in examinations. R. 19–20.

The ALJ referred back to his own assessment of the medical records when he decided to reject one of the medical opinions (or a portion of an opinion) and when he found that Plemon's subjective complaints weren't fully supported. R. 20–22. In declining to fully credit King's opinion and Plemon's subjective complaints, the only reason the ALJ gave was that they weren't consistent with his interpretation of the medical records.

5

The ALJ isn't required to adopt a particular medical opinion to support the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). But the ALJ does have to provide reasoning for his conclusions and consider all the evidence without interpreting medical records that are beyond the abilities of a lay person to understand. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Callaway v. Saul*, No. 19-cv-818-jdp, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020); *Strangis v. Saul*, No. 17-cv-690-wmc, 2019 WL 4744829, at *9 (W.D. Wis. Sept. 30, 2019). The ALJ failed to comply with this standard.

The ALJ provided a lengthy summary of Plemon's medical records, but a summary isn't a substitute for analysis. *See House v. Saul*, No. 20-cv-518-jdp, 2021 WL 1345625, at *2–4 (W.D. Wis. Apr. 12, 2021) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). The ALJ didn't explain how the medical records supported his RFC, and he didn't explain how the records undermined either the functional capacity evaluation that King conducted or Plemon's own subjective complaints. Specifically, the ALJ didn't explain how the cited evidence showed that Plemon could sit for six hours or stand for two hours of an eight-hour workday. It appears that the ALJ rejected medical opinions and Plemon's subjective complaints based on nothing more than his own interpretation of the records, which isn't substantial evidence in the absence of a clearer explanation for how the records informed the RFC. *See Gibbons v. Saul*, 801 F. App'x 411, 417 (7th Cir. 2020); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

The court will remand the case to allow the ALJ to reconsider King's opinion, Plemon's subjective complaints, and the appropriate RFC. If the ALJ determines that none of the medical opinions, either individually or collectively, provide an adequate basis to determine Plemon's RFC, he should consider seeking input from another medical source. *See Bates v. Colvin*, 736

F.3d 1093, 1101 (7th Cir. 2013); *Chase v. Astrue*, 458 F. App'x 553, 556–57 (7th Cir. 2012); *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010).

ORDER

IT IS ORDERED that the decision denying Elizabeth Plemon's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered March 22, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge